IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br> )<br>       vs.                                 )<br> )<br>JUAN WYSONG,                       )<br> )<br>             Defendant.              ) | Criminal No. 15-87<br>Judge Nora Barry Fischer |

**<u>MEMORANDUM ORDER</u>**

Presently before the Court are Defendant Juan Wysong's pro se Renewed Motion for Compassionate Release, (Docket No. 3390), his Supplemental Motion for Compassionate Release filed by appointed counsel, (Docket No. 3408), and the Government's Response thereto, (Docket No. 3425). Defendant seeks compassionate release and a reduction of his 120-month sentence to time served (or approximately 54 months) which the Government opposes. (Docket Nos. 3390; 3408; 3425; 3434; 3441; 3442; 3448; 3449). The Motions have been exhaustively briefed and the parties have also provided the Court with numerous exhibits including medical records filed under seal. (*See* Docket Nos. 3408-1:11; 3420; 3425-1; 3426; 3434; 3438; 3441; 3442; 3443; 3448; 3449). After careful consideration of the parties' positions in light of the relevant standards set forth in the Court's prior decision and subsequent caselaw by the Third Circuit, *see United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021), and for the following reasons, Defendant's Renewed Motion and Supplemental Motion [3390] and [3408] are DENIED, without prejudice.

As the parties are familiar with the facts of this matter, the Court focuses on the background and issues necessary to resolve the instant motion. (*See* Docket Nos. 3193). Defendant is currently serving a 120-month sentence imposed by this Court on February 20, 2019 following his guilty pleas to one count of conspiracy to distribute and possess with intent to distribute 1 kilogram or

1

more of heroin and three counts of money laundering. (Docket No. 2976). He is incarcerated at the Federal Prison Camp at FCI Butner and has a projected release date of July 28, 2026, which accounts for both good time and First Step Act credits. (Docket No. 3390-1 at 11). He also has a home detention eligibility date of January 18, 2026. (Docket No. 3390-1 at 11). In a Memorandum Order dated on September 19, 2020, this Court denied Defendant's prior motion for compassionate release because he failed to meet his burden to show extraordinary and compelling reasons for release based on his preexisting physical health conditions including paralysis, MRSA, a punctured lung, hemorrhoids, anemia, a history of UTIs, the risks posed by the COVID-19 pandemic, and his contraction of COVID-19 while incarcerated at FCI Butner Low. (Docket No. 3177). The Court further found that a careful weighing of the § 3553(a) factors did not otherwise justify a reduction of his 10-year sentence to "time served" which was only 19 months at the time. (*Id*.). Defendant appealed this Court's decision and the United States Court of Appeals for the Third Circuit summarily affirmed. (Docket No. 3193).

With respect to Defendant's renewed motion, the Government objects that he has failed to exhaust his administrative remedies in that he submitted a request for a reduction in sentence ("RIS") to the Warden on February 3, 2023 seeking compassionate release based on his preexisting medical conditions but now raises additional matters which have developed in the months after his request including new medical issues, an alleged failure to provide necessary medical supplies and medications, and other complaints about his housing at the prison. (Docket No. 3425). Defendant counters that the Court should reject the Government's argument and broadly construe his pro se RIS request to the Warden as sufficient to exhaust all of his present complaints about the sufficiency of his medical care provided by the prison during the subsequent months. (Docket No. 3434). Having considered the parties' arguments, the Court agrees with the Government that

Defendant has failed to exhaust his administrative remedies and has not demonstrated that he is entitled to a reduction in sentence at this time.

"To obtain relief under § 3582, a defendant must request that the Director of the Bureau of Prisons seek a reduction of the defendant's sentence on the defendant's behalf." *United States v. Morris*, Cr. No. 13-125, 2022 WL 1213960, at *1 (W.D. Pa. Apr. 25, 2022) (citing 18 U.S.C. § 3582(c)(1)(A)). "A defendant may file a motion before the sentencing court on his own behalf if 'the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Barnes*, Cr. No. 18-139, 2022 WL 4133342, at *2 (W.D. Pa. Sept. 12, 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)). A defendant's failure to properly exhaust administrative remedies presents a "glaring roadblock" to a request for a reduction in sentence. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Following these principles, Courts in this District have repeatedly held that a defendant must present the same request for relief to the BOP that is provided to the Court and that motions for compassionate release raising new issues or arguments not previously raised with the BOP must be denied for failure to exhaust administrative remedies. *See e.g., United States v. Freed*, No. 2:11-CR-132, 2023 WL 4685816, at *2 (W.D. Pa. July 21, 2023) (Ranjan, J.) ("By failing to specifically and explicitly make his medical-treatment complaints to the BOP, Mr. Freed denied the BOP an opportunity to fully assess and address them.[…] In sum, the BOP must have an opportunity to rectify deficiencies in its provision of treatment before the Court can even entertain Mr. Freed's motion."); *United States v. Singleton*, No. CR 19-162, 2023 WL 4031821, at *4 (W.D. Pa. June 15, 2023) (Schwab, J.) ("Based on the evidence of the record, and the arguments set forth

in Defendant's Motion, Defendant seeks a compassionate release from this Court for several new and different reasons. Therefore, the Court finds that Defendant has not exhausted his administrative remedies..."); *United States v. Amaro*, No. CR 19-263, 2022 WL 2789868, at *2 (W.D. Pa. July 15, 2022) (Conti, J.) ("Amaro's administrative request was based on his wife's pregnancy and the financial stress caused by his family's tire business. Amaro never asked the warden to consider compassionate release based on his own susceptibility to Covid-19 and the BOP never addressed that issue. Amaro, therefore, failed to exhaust his administrative remedies regarding the Covid-19 virus."). The same is true here because Defendant's RIS request to the Warden at FCI Butner focused on his preexisting medical conditions as of February 3, 2023 while his motions for compassionate release seek a sentence reduction based on new ailments and complaints about his medical care for events that took place in the months after his request was denied, i.e., April through August of 2023. (Docket Nos. 3425-1 at 1-3; 3390; 3408).

To that end, Defendant's RIS request to the Warden at FCI Butner indicates that he is requesting release based on an alleged "debilitated medical condition." (Docket No. 3425-1 at 1). In a corresponding email communication to the prison dated January 17, 2023, he states:

> Good Morning:
>
> Please be advised that I hereby make [this] request for your recommendation for release under the First Step Act of 2018 Compassionate Release / Reduction in Sentence. My medical records will confirm the following major health issues that I suffer, including but not limited to comorbidities to COVID-19:
>
> (a) Paraplegia: Caused by a major motorcycle accident, which has caused severe compromise to my immune systems;
>
> (b) Chronic Blood Clotting: In my legs, with filters surgically implanted in my aorta artery, causing high risk ramifications arising from bed sores;

> (c) Punctured Lung: Difficulty breathing, shortness of breath, causing added risk for exposure to pneumonia. I use the nebulizer;
>
> (d) Anemia: I have major internal bleeding with 3 transfusions since my arrival at the Low;
>
> (e) Urinary Track Infections ("UTI"): which has caused high & continuing infections
>
> (f) MRSA & Pneumonia: due to my paralysis, I will always be subject to these diseases
>
> (g) Cellulitis: If anything cuts my skin, the wounds become infected rapidly. I've endured hospitalization.

(Docket No. 3425-1 at 3). The Warden at FCI Butner denied this request in a letter dated February 22, 2023, stating the following:

> You do not have a debilitated medical condition as outlined in the program statement [5050.50, Compassionate Release/Reduction in Sentence] and are independent in your activities of daily living. Your current medical conditions remain under control. Accordingly, your RIS request is denied at this time.
>
> At present, you are receiving appropriate medical care and treatment by Health Services staff. We are committed to providing you with the necessary and appropriate care for your medical needs.

(Docket No. 3390-1 at 1). Defendant does not meaningfully challenge the Warden's determination that his medical conditions were under control around the time of his RIS request in February of 2023. (Docket Nos. 3330; 3408). Indeed, the BOP records reveal that Defendant's care level was reduced by medical staff from Care Level 3 to Care Level 2 on September 15, 2022 and as a result, he was transferred to the lower security prison camp on December 22, 2022. (Docket No. 3390-1 at 13-15). It also appears to the Court from Defendant's medical records around this time that his conditions were controlled with prescribed medications and required only minimal intervention by medical staff. (*See* Docket No. 3426).

On the other hand, Defendant's motions for compassionate release and his supplemental briefs ask for a sentence reduction based on new medical conditions which developed after that time, i.e., an alleged spider bite, and a series of infections and abscesses requiring treatment including a three-day hospitalization at Duke Regional Hospital where he underwent a procedure to drain a large abscess on his back. (Docket Nos. 3390; 3408). He also criticizes the BOP for alleged delays in providing him with medical supplies such as catheters and access to what he believes is the most appropriate treatment and medications. (*Id.*).

While Defendant suggests that his present complaints to this Court are close enough to the general complaints in his RIS request to the Warden, the Court disagrees because the BOP must first consider the Defendant's challenges to the provision of treatment for these newly developed ailments before this Court may do so. *See Freed*, 2023 WL 4685816, at *2. To that end, the medical records from the brief hospitalization at Duke make clear that Defendant's recent medical episodes are distinct from the preexisting conditions he listed in the RIS request, which included a history of MRSA infections but did not list the MSSA (methicillin-resistant staphylococcus aureus) infections with which he was later diagnosed. (*Compare* Docket No. 3425-1 at 1-3 *with* Docket No. 3343-1 at 268-383). Among other things, the Duke medical records indicate that:

- Defendant had developed an infection and a fever as high as 102 degrees on June 1 and 2, 2023 but did not have a fever upon his admission to the Duke facility on June 7, 2023 as he had been prescribed antibiotics by BOP staff and the fever was controlled;

- his blood pressure and heart rate were stable and he did not appear ill upon his admission;

- he has a past-history of MRSA infections and abscesses, but had not been diagnosed with MRSA since 2018;

- he presented with a large abscess on his back, was diagnosed with an MSSA staph infection and underwent a successful I&D

- (incision and drainage) procedure in the Emergency Department of the hospital on June 7, 2023;

- he also underwent a thoracic MRI and chest x-ray given concerns that the infection may have spread but it was determined that the infection was localized on his skin; and,

- the wound was packed, he was prescribed a 14-day course of antibiotics, observed over the next two days and was discharged and returned to FCI Butner on June 9, 2023.

(Docket No. 3343-1 at 268-283).

In his more recent submissions in July and August, 2023, Defendant complains that he has a continued need for treatment and medications for wound care associated with the procedure on his back and that he has experienced additional abscesses since that time. (Docket Nos. 3442; 3449). Although he has submitted several grievances to the prison requesting treatment, he has not presented any evidence that he has made another RIS request to the Warden. (*See id*.). The record also lacks an expert report or objective medical evidence substantiating Defendant's claims that he is receiving substandard medical care and insofar as any such evidence is obtained, it should also be provided to the Warden in the first instance. *See Freed*, 2023 WL 4685816, at *2 ("it certainly would have been helpful for the BOP to have the cardiologist's declaration that Mr. Freed now attaches to his motion (ECF 108-2), as that would have given the BOP a chance to review Mr. Freed's medical history and potentially provide the care consistent with that physician's recommendations."). As such, Defendant's motions seeking relief for conditions and medical treatment outside the scope of his RIS request are not properly before this Court. *See also United States v. Johnson*, App. No. 21-2649, 2022 WL 1402048, at *1 (3d Cir. May 4, 2022) (holding that defendant failed to exhaust administrative remedies because his cursory complaints to the warden were made after he filed his motion for compassionate release with the Court).

Moving on, to the extent that Defendant sufficiently exhausted his general claims that his long-standing and preexisting conditions warranted compassionate release in his February 3, 2023 RIS request, the Court once again holds that he has failed to establish "extraordinary and compelling reasons" justifying that his sentence be reduced from 120 months to "time served" or approximately 54 months. *See Andrews*, 12 F.4th at 258. As noted above, at the time of this request, Defendant's care level had been recently reduced to Care Level 2 and his conditions were controlled with medications and monitoring by the medical staff at FCI Butner. (Docket Nos. 3390-1 at 13-15; 3426). Hence, the Court sees no basis to depart from its prior ruling that his preexisting conditions are insufficient to demonstrate extraordinary and compelling reasons for release. *See Andrews*, 12 F.4th at 258.

Finally, even if Defendant had met his burden to show extraordinary and compelling reasons for release, the Court has carefully considered all of the relevant § 3553(a) factors and continues to believe that his preexisting health ailments do not outweigh the other § 3553(a) factors supporting the 120-month sentence. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020). As the Court previously held,

> Defendant was sentenced to the mandatory minimum term of 120 months' incarceration which represented a 31-month downward variance from the low end of the advisory guidelines range of 151-188 months' incarceration. (Docket Nos. 2974; 2976). Neither party appealed the length of the sentence and the Court believes that such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case. *See* 18 U.S.C. § 3553(a)(1). The mandatory minimum sentence accounts for the gravity of the offense conduct and bond violations, as Defendant: played a managerial role in the Gardenhire Drug Trafficking Organization from 2012 to 2015; was responsible for at least 3 and up to 10 kilograms of heroin; possessed firearms which he forfeited to the Government; and, continued to engage in heroin distribution while on bond, leading to an arrest in January of 2019 and subsequent state conviction. (Docket Nos. 2974; 2976).

> The downward variance also reflected Defendant's physical health conditions, as he was paralyzed in 2007 following a motorcycle accident and has had related health problems since that time. *See Statement of Reasons 2/20/19*.
>
> …
>
> [T]here remains a need to deter Defendant from committing additional crimes because his physical limitations, family support, steady employment and bond conditions were insufficient to dissuade him from continuing to engage in distribution of dangerous controlled substances. *See* 18 U.S.C. § 3553(a)(2). Finally, the 120-month sentence provides general deterrence to others and also promotes respect for the law while the substantial sentence reduction requested by the defense […] "would be inconsistent with the section 3553(a) factors." *Pawlowski*, 967 F.3d at 330.

(Docket No. 3177). All told, the Court finds that the 120-month term of imprisonment remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case and declines to exercise its discretion to reduce Defendant's sentence to "time served" or 54 months' incarceration. *See Pawlowski*, 967 F.3d at 330.

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's Motions seeking compassionate release [3390] and [3408] are DENIED, without prejudice.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:   August 15, 2023

cc/ecf:   all counsel of record.

Juan Wysong c/o D. Robert Marion, Jr., Esq.